WAYNE D. LONSTEIN, ESQ.
LONSTEIN LAW OFFICE, P.C.
80 North Main Street, P.O. Box 351
Ellenville, New York 12428
Telephone: 845-647-8500
Facsimile: 845-647-6277
Email: Legal@signallaw.com
WL0807

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
NEWARK DIVISION

------------------------------------------
**PREMIUM SPORTS, INC.,**

        Plaintiff,

v.

CANDIDO PEREIRA and CARLOS LOPES, Individually and as officers, directors, shareholders, and/or principals of UNIAO DESPORTIVA FERREIRENSE, INC., d/b/a UNIAO DESPORTIVA FERREIRENSE,

and

UNIAO DESPORTIVA FERREIRENSE, INC., d/b/a UNIAO DESPORTIVA FERREIRENSE,

        Defendants.
------------------------------------------

**PLAINTIFF'S AFFIDAVIT IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Civil Action No.: 2:14-CV-06240-KSH-CLW

STATE OF CALIFORNIA     }
                                    }ss
COUNTY OF SAN FRANCISCO  }

TAE KIM, being duly sworn, deposes and states the following:

1. I am the Vice President of Premium Sports, Inc., and I am fully familiar with the facts and circumstances herein.

2. I make this Affidavit in support of Plaintiff's request to recover statutory damages, including costs, attorneys' fees and interest in the within request for judgment by default.

3. Plaintiff is the owner of the exclusive right to the commercial distribution of the 2014 Sport TV games in the United States and Canada as well as the owner of the exclusive right to publicly broadcast and license the public exhibition of same to commercial entities, including SPORT TV Soccer and the Guimaraes v. Porto Match, broadcasted on March 2, 2014, via closed circuit television, encrypted satellite signal and internet platforms (hereinafter referred to as the "Broadcast"). See United States Certificate of Copyright Registration Number PA-1-900-756 attached as Exhibit "A". The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems, satellite and distribution companies via satellite signal. Our company thereafter marketed the Broadcast to commercial establishments in the State of New Jersey and elsewhere for a fee.

4. In order for a commercial establishment to obtain lawful authority to exhibit the Broadcast, a license would have to be issued by Plaintiff, Premium Sports, Inc. (hereinafter referred to as "Plaintiff").

5. Prior to the exhibition of the Broadcast, Plaintiff retained independent auditors to canvas and identify establishments that unlawfully exhibited the Broadcast on March 2, 2014.

6. Defendants, CANDIDO PEREIRA and CARLOS LOPES, Individually and as officers, directors, shareholders, and/or principals of UNIAO DESPORTIVA FERREIRENSE, INC., d/b/a UNIAO DESPORTIVA FERREIRENSE and UNIAO DESPORTIVA FERREIRENSE, INC., d/b/a UNIAO DESPORTIVA FERREIRENSE, did not purchase a license to exhibit the Broadcast from Plaintiff.

7. According to our files, Tracie Baugh, one of the auditors, visited Defendants' establishment known as Uniao Desportiva Ferreirense located at 113 Main St., Newark, NJ 07105, on March 2, 2014 at approximately 3:38 p.m. She entered and observed two (2) television sets which were exhibiting the Broadcast to approximately 12 patrons in an establishment with an estimated capacity of 1-50. The auditor's affidavit attesting to these facts is attached hereto as Exhibit "B". During the course of her visit, Ms. Baugh video recorded the exhibition of

the Broadcast within Defendants' commercial establishment. The video is attached hereto as Exhibit "C".

8. Defendants' exhibition of the March 2, 2014 Broadcast was without license from Plaintiff and not authorized by Plaintiff, Premium Sports, Inc. Therefore, said exhibition was in violation of the Piracy Statutes of the Federal Communications Act as well as infringement of Copyright.

9. I do not believe that this programming is or can be "mistakenly or innocently" intercepted. Furthermore, I am aware that some of the methods that a signal pirate can use to unlawfully intercept and exhibit a program are as follows, without limitation:

    a. The intentional misrepresentation of a commercial establishment as a residential property would allow for the purchase of the Broadcast from their cable, satellite, Fios or other broadband provider account at a residential price, or

    b. Ordering the Broadcast for their residence and moving their residential receiver to the commercial location, or

    c. Employ "Slingbox" or other similar technology, which allows a consumer to literally sling programming from their personal home cable, Fios, Broadband or satellite systems and onto their computers, which in turn can allow commercial misuse of

    residential programming feeds through the internet from literally anywhere in the world.

   d. Streaming or sharing the Broadcast via broadband.

10. There has been undisputed erosion of commercial sales of proprietary programming, which undoubtedly results from the piracy of programs by unauthorized and unlicensed establishments.

11. Plaintiff has invested substantial sums in the promotion of its programming, and this Broadcast in particular, and without the identification and prosecution of pirates, Premium Sports, Inc.'s legal sales will erode significantly, paying customers will be subject to unfair competition and ultimately Plaintiff's business will be irreparably damaged.

12. Turning these facts to the matter before the Court, I have been advised by counsel that the Court has the discretion in the awarding of damages for these nefarious and illegal acts.

13. It is respectfully submitted to this honorable Court that piracy, not only has severely damaged our business, but also has a negative effect upon lawful customers of Plaintiff, who have paid the proper licensing fees for the Broadcast and are unable to recoup their investment due to piracy.

14. We, therefore, humbly ask this Court to grant a significant award of damages due to the fact that Defendants' actions were per se intentional and are impossible without the willful and intentional acts or omissions.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under 47 U.S.C. § 605(a) on COUNT I and under 17 U.S.C. § 501(a) on COUNT III of the Plaintiff's complaint against the Defendants, jointly and severally, as follows:

**Against CANDIDO PEREIRA, Individually and as officer, director, shareholder, and/or principal of UNIAO DESPORTIVA FERREIRENSE, INC., d/b/a UNIAO DESPORTIVA FERREIRENSE, as follows:**

1) TEN THOUSAND DOLLARS ($10,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and

2) FIFTEEN THOUSAND DOLLARS ($15,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for Defendant's willful violation of 47 U.S.C. § 605(a); and

3) TEN THOUSAND DOLLARS ($10,000.00) pursuant to 17 U.S.C. § 504(c)(1); and

4) THIRTY THOUSAND DOLLARS ($30,000.00) pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful violation of 17 U.S.C. § 501; and

5) Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the discretion of the Court, full costs, including reasonable attorney fees, as set forth in the attorney affidavit;

And further,

**Against CARLOS LOPES, Individually and as officer, director, shareholder, and/or principal of UNIAO DESPORTIVA FERREIRENSE, INC., d/b/a UNIAO DESPORTIVA FERREIRENSE, as follows:**

1) TEN THOUSAND DOLLARS ($10,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and

2) FIFTEEN THOUSAND DOLLARS ($15,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for Defendant's willful violation of 47 U.S.C. § 605(a); and

3) TEN THOUSAND DOLLARS ($10,000.00) pursuant to 17 U.S.C. § 504(c)(1); and

4) THIRTY THOUSAND DOLLARS ($30,000.00) pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful violation of 17 U.S.C. § 501; and

5) Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the discretion of the Court, full costs, including reasonable attorney fees, as set forth in the attorney affidavit;

and further,

**Against UNIAO DESPORTIVA FERREIRENSE, INC., d/b/a UNIAO DESPORTIVA FERREIRENSE, as follows:**

1) TEN THOUSAND DOLLARS ($10,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and

2) FIFTEEN THOUSAND DOLLARS ($15,000.00) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for Defendant's willful violation of 47 U.S.C. § 605(a); and

3) TEN THOUSAND DOLLARS ($10,000.00) pursuant to 17 U.S.C. § 504(c)(1); and

4) THIRTY THOUSAND DOLLARS ($30,000.00) pursuant to 17 U.S.C. § 504(c)(2), for Defendants' willful violation of 17 U.S.C. § 501; and

5)     Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), in the discretion of the Court, full costs, including reasonable attorney fees, as set forth in the attorney affidavit.

Dated: _JAN 14, 2015_

 

_____
TAE KIM
Vice President
Premium Sports, Inc.

JURAT

State of California
County of San Francisco

Subscribed and sworn to (or affirmed) before me on

this _____ day of _____, 2015, by _____

provided to me on the basis of satisfactory evidence to be the person(s) who

appeared before me.

Notary Signature: _Please see updated attached Notarial Jurat_
                                                                    - Notary Public.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Francisco_

Subscribed and sworn to (or affirmed) before me on this _14th_ day of _January_, 20_15_, by _TAE KIM_ _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

MAHESH PATEL
Commission # 1938410
Notary Public - California
San Francisco County
My Comm. Expires Jun 21, 2015

(Seal)                          Signature _____